

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DR. LAWRENCE ROBINSON,** **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| **CITY OF PHILADELPHIA, et al.,** **Defendants.** | : | **No. 10-1277** |

FILED
AUG 17 2011
MICHAEL E. KUNZ, Clerk
By. ___ Dep. Clerk

**MEMORANDUM**

**Schiller, J.** **August 17, 2011**

Plaintiff Dr. Lawrence Robinson alleges that Defendant City of Philadelphia ("the City") and certain of its officials unlawfully terminated him because of his age and race. He also alleges that the City denied him due process when he protested his layoff before the City's Civil Service Commission ("CSC"). He brings claims under Title VII, the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and 42 U.S.C. § 1983. Currently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the motion is denied in part and granted in part.

## I. BACKGROUND

### A. Dr. Robinson's Tenure at DPH

In 1992, Dr. Robinson, a fifty-five-year-old African-American, became the Deputy Health Commissioner for Health Promotion in the City's Department of Public Health ("DPH"). (Pl.'s Opp to Def.'s Mot. for Summ. J. ["Pl.'s Opp'n"] Ex. 1 [Dr. Robinson Curriculum Vitae].) Dr. Robinson is a graduate of Harvard College, the University of Pennsylvania Medical School, and the Johns Hopkins School of Public Health. (*Id.*) At DPH, Dr. Robinson performed an array of duties,

including strategic public health promotion, evaluating health promotion campaigns, maintaining relationships with local and state health agencies, and coordinating efforts to obtain state, federal, and private funding. (*Id.*) He was also required to know "general principles of epidemiology [and] the principles, practices and techniques of statistics as applied to medical research and public health," and to evaluate scientific data in order to implement public health policies. (*Id.* Ex. 9 [Job Description of Deputy Health Comm'r].) Dr. Robinson performed his job well. (*See, e.g. id.* Ex. 33 [Description of Dr. Robinson's 2006 Practitioner of the Year Award, Philadelphia Med. Soc'y].) His starting annual salary in 1992 was $77,061, and by 2009 had increased to $122,969. (Pl.'s Opp'n Ex. 8 [Report of Appointment dated Apr. 7, 1992], Ex. 122 [Payroll Master Record dated Jan. 2009].)

On January 22, 2008, Defendant Dr. Robert Schwarz became DPH Commissioner and Dr. Robinson's new supervisor. Dr. Robinson was moved to an undesirable office location and was not immediately given a "suitable role . . . in line with [his] experience and training." (*See* Pl.'s Opp'n Ex. 170 [Jan. 23, 2008 e-mail from Dr. Robinson to Dr. Schwarz].) In April of 2008, Dr. Schwarz gave Dr. Robinson a project aimed at helping aging Philadelphians, which Dr. Robinson performed satisfactorily. (*See id.* Ex. 174 [June 24, 2008 e-mails between Drs. Robinson and Schwarz].)

On September 11, 2008, Mayor Michael Nutter announced that due to the brewing financial crisis, City departments would be required to limit hiring and to cut spending. (*Id.* Ex. 177 [Press Release dated Sept. 11, 2008). Defendant Alfred D'Attilio, the City's human resources director, began planning for layoffs. (*See id.* Ex. 198 [D'Attilio Dep.] 26-28.) A few days later, Dr. Schwarz circulated a list of proposed budget cuts that indicated DPH's budget would be cut by approximately $1.2 million. (*Id.* Ex. 178 [e-mail attachment from Dr. Schwarz dated Sept. 14, 2008].) Although

some other City departments were able to achieve budget reductions without layoffs, DPH selected Dr. Robinson for termination with D'Attilio's approval. (Defs.' Mot. for Summ J. Ex. 11 [Mem. from Dr. Schwarz to D'Attilio dated Nov. 7, 2010].)

In early December of 2008, Dr. Schwarz informed Dr. Robinson that he was selected for layoff. (Am. Compl. ¶ 26.) On December 5, 2008, Dr. Schwarz sent Dr. Robinson a follow-up letter confirming that he would be laid off effective January 16, 2009. (Pl.'s Opp'n Ex. 88 [Dec. 5, 2008 Letter from Dr. Schwarz to Dr. Robinson].) The letter informed Dr. Robinson that he may be eligible for voluntary demotion in lieu of layoff, subject to the approval of DPH's human resources director, Defendant Karla Hill. (*Id.*) The letter also informed him that the layoff was conducted based on the City's schedule of layoff scores, which were determined based on seniority, military service, and the employee's performance ratings. (*Id.*) Lastly, the letter mentioned that Dr. Robinson could appeal his layoff to the CSC. (*Id.*) Dr. Robinson volunteered for demotion, but the City's personnel department disapproved this request on January 8, 2009. (*Id.* Ex. 105 [e-mail from Michael McNally to Karla Hill dated Jan. 8, 2009].) Dr. Robinson was then faced with a choice between: (1) retiring and receiving a payment for unused sick time and certain insurance benefits; and (2) being laid off and being placed on a layoff list for the coming year, but losing his right to retirement benefits. (*See* Dec. 5, 2008 Letter from Dr. Schwarz to Dr. Robinson.) Robinson submitted his retirement paperwork effective January 15, 2009, the day before his layoff was to take effect. (Pl.'s Opp'n Ex. 111 [Notice of Retirement].) Dr. Robinson characterizes this as a constructive discharge. (Am. Compl. ¶ 7.)

Meanwhile, a series of events occurred that Dr. Robinson contends reveal that his termination was discriminatory. In the summer of 2008, Dr. Schwartz approached Dr. Giridhar Mallya for a new

position at DPH. Dr. Mallya was in his 30s, and had graduated from Brown University Medical School five years earlier. (*See* Pl.'s Opp'n Ex. 74 [Dr. Mallya Curriculum Vitae].) Although the City had no formal position for Dr. Mallya, Dr. Schwarz sought to hire him to perform somewhat similar functions as Dr. Robinson. Dr. Mallya set forth his anticipated duties in a memorandum to Dr. Schwarz:

> (1) Reconfiguring and using health data to do public health monitoring and planning [,] creating a core list of city-wide health indicators to target and track over time; community health profiles, access mapping and monitoring
>
> (2) Working toward intra-city regionalized health care partnerships [,] building on hospital-district health center specialty care partnerships (and hospital- CHC OB partnerships) to create health care units that focus on the health of geographic populations
>
> (3) Improving the organization and quality of transitions of care [,] addressing information flow between health centers and hospitals; real-time monitoring of health center wait times, productivity; facilitating primary care follow-up for uninsured ED and hospitalized patients
>
> (4) Helping to develop collaborations between [the health department] and academic medical centers for research and health professions training
>
> (5) Providing input to feasibility assessments of city-wide plan for insuring the uninsured

(*Id.* Ex. 176 [Aug. 11, 2008 e-mails between Drs. Schwarz and Mallya].) On September 18, 2008, Dr. Schwarz formally offered Dr. Mallya a position as Director of Policy and Planning at DPH at a starting salary of $130,000 per year. (*Id.* Ex. 77 [Sept. 18, 2008 Letter from Dr. Schwarz].)

Dr. Robinson also points out that a white colleague, Dr. James Dean, was able to retain a position at DPH while Dr. Robinson was not. Dr. Dean was DPH's medical director, and like Dr. Robinson, was selected for layoff in December of 2008. (*Id.* Ex. 88 [Dec. 5, 2008 letter from Dr. Schwarz to Dr. Dean].) Dr. Dean was initially disapproved for demotion in lieu of layoff, but was

ultimately able to secure another position at DPH after meeting with Dr. Schwarz and Dr. Thomas Storey, the director of DPH's Ambulatory Health Services Division. (*See id.* Ex. 191 [Jan. 2009 e-mails between Dr. Dean and Karla Hill].) In a farewell e-mail to his soon-to-be former colleagues in his subdivision, Dr. Dean noted that Dr. Schwarz and Hill had "been tremendously helpful in working with [him] to identify options . . . so that I can continue to be of service to [DPH]." (*Id.* Ex. 193 [Jan. 16, 2009 e-mail from Dr. Dean].) Even though Dr. Robinson's layoff score afforded him preference over Dr. Dean for positions according to the City's procedures, Dr. Robinson was not offered any position. (*See id.* Ex. 105 [Dr. Robinson's Layoff Register]; Ex. 108 [Dr. Dean's Layoff Register]; D'Attilio Dep. 160-61.)

**B. Procedural History**

On January 5, 2009, Robinson appealed his termination to the CSC on multiple grounds, including the contention that his termination was discriminatory. On March 11, 2009, the CSC rejected his appeal because Dr. Robinson "voluntarily retired," and thus "the layoff did not take place." (*Id.* Ex. 134 [Mar. 11, 2009 letter from CSC].) Dr. Robinson appealed the CSC decision to the Philadelphia County Court of Common Pleas on April 7, 2009. (Am. Compl. Ex. A [Notice of Appeal].) He then filed a separate action in the Court of Common pleas in August of 2009 alleging discrimination. (*See id.* Ex. B [Summons dated Aug. 14, 2009].) After the two cases were consolidated, Defendants removed the action to this Court on March 24, 2010. On June 1, 2010, the Court remanded Robinson's CSC-related claims to the Philadelphia Court of Common Pleas, noting that "a federal district court [cannot] usurp the state court's role in deciding appeals from the [CSC]." Defendants filed this motion on July 8, 2011.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Title VII and PHRA Race Discrimination Claims

#### *1. Claims against the City*

Title VII makes it unlawful for an employer to discharge or discriminate against a person in connection with his employment because of race. 42 U.S.C. § 2000e-2. To establish a prima facie case, Dr. Robinson must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under

circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Defendants do not dispute the first three elements, but argue there were no circumstances that could give rise to an inference of race discrimination. Defendants argue that "Plaintiff must present sufficient evidence that other employees who were similarly situated to him did not suffer the same adverse employment action." (Defs.' Mot. for Summ J. 10.) Although evidence most often used to establish this inference is disparate treatment, *Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 366 (3d Cir. 2008), a plaintiff may also show "that the employer has previously discriminated against other persons within the plaintiff's protected class." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999) (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998)).

Here, Dr. Robinson has put forth evidence that Dr. Robert Hodge, another African-American, was subjected to discrimination at DPH. In a letter to Mayor Nutter, Dr. Hodge catalogued purported discrimination at DPH, writing that "educated and qualified black males [at DPH] are less inclined to reap the same benefits as our white counterparts." (Pl.'s Opp'n Ex. 175 [July 9, 2008 e-mail from Dr. Hodge to Rachel Lawton].) Accordingly, Dr. Robinson has made out his prima facie case. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a prima facie case of employment discrimination.").

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Stouch v. Twp. of Irvington*, 354 F. App'x 660, 666 (3d Cir. 2009); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). If the employer meets this burden, the plaintiff must establish that this proffered reason is a pretext for discrimination. *Stouch*, 354 F.

App'x at 666; *Fuentes*, 32 F.3d at 763. The Third Circuit has explained:

> [I]n order to prove the employer's explanation is pretextual, the plaintiff must cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication . . . or allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Stouch*, 354 F. App'x at 666 (quoting *Fuentes*, 32 F.3d at 762). To survive summary judgment on a Title VII claim, "the plaintiff need only raise doubt as to the legitimacy of the defendant's proffered reason for its adverse action; it need not prove its discrimination case." *Andes v. N.J. City Univ.*, 419 F. App'x 230, 233 (3d Cir. 2011).

The City has articulated a legitimate, non-discriminatory reason for Dr. Robinson's termination: Philadelphia's 2008 budget crisis. However, Dr. Robinson has put forth sufficient evidence to show pretext. First, a jury could disbelieve the City's reason because despite the budget cuts, Dr. Schwarz created a similar position for Dr. Mallya at DPH at a higher salary than Dr. Robinson. Also, Dr. Robinson has put forth evidence that Dr. Schwarz and Hill helped Dr. Dean — a white doctor — obtain a position to which Dr. Robinson should have been entitled based on his layoff score. Accordingly, the Court will deny Defendants' motion with respect to the Title VII and PHRA race discrimination claims against the City. *See Brown v. J Kaz, Inc.*, 581 F.3d 175, 180 n.1 (3d Cir. 2009) (noting that "claims under the PHRA are interpreted coextensively with Title VII claims").

### 2. *Individual liability*

The PHRA, unlike Title VII, forbids "any person . . . to aid, abet, incite, compel, or coerce the doing of any . . . unlawful discriminatory practice . . . or to attempt, directly or indirectly, to commit any . . . unlawful discriminatory practice." 43 Pa. Cons. Stat. § 955(e). Therefore, "[a]

PHRA plaintiff may advance individual liability claims against supervisory employees who bear responsibility for implementing an allegedly unlawful discriminatory practice." *D'Altilio v. Dover Twp.*, Civ. A. No. 06-1931, 2009 WL 2948524 at *12 (M.D. Pa. Sept. 14, 2009). As explained above, genuine issues of material fact remain with respect to whether Dr. Robinson's termination was motivated by race. Accordingly, the Court will deny Defendants' motion with respect to individual PHRA race discrimination claims against Dr. Schwartz, Hill, and D'Attilio, as Dr. Robinson has put forth sufficient evidence that the latter two played active roles in the discriminatory termination Dr. Schwarz orchestrated.

At this juncture, however, the Court will grant summary judgment with respect to the Title VII and PHRA claims against the Doe defendants. Discovery has closed, and Dr. Robinson has yet to identify any additional defendants. *See Falodun v. Olson*, Civ. A. No. 09-0406, 2011 WL 846240 at *1 n. 4 (M.D. Pa. Mar. 8, 2011) ("Fictitious names may be used to identify defendants until reasonable discovery permits actual defendants to assume their places, but John and Jane Doe defendants eventually must be dismissed if discovery yields no identities.") (citing *Parker v. United States*, 197 F. App'x 171, 173 n.1 (3d Cir. 2006)).

**B. ADEA and PHRA Age Discrimination Claims**

Dr. Robinson also alleges that he was terminated because of his age. To establish unlawful age discrimination under the ADEA, the plaintiff must prove that age was the "but-for" cause of the defendant's adverse action. *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009) (also noting that the plain language of the ADEA requires the plaintiff to prove that the defendant took the adverse employment action "because of" age); *see Funayama v. Nichia Am. Corp.*, Civ. A. No. 08–5599, 2011 WL 1399844 at *15 (E.D. Pa. Apr. 13, 2011). The plaintiff's burden of persuasion

never shifts to the employer to show that it would have taken the adverse action regardless of age, even if the plaintiff has produced evidence that age was a motivating factor in the decision. *Gross*, 129 S.Ct. at 2352.

Where there is no direct evidence of discrimination — and there is none here — courts employ the burden-shifting framework set forth in *McDonnell Douglas*. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). Assuming that Dr. Robinson has made out a prima facie case, he has not met his burden to show that age was a pretext for discrimination, and has not shown that age was a "but-for" cause of his termination. Dr. Robinson relies on an e-mail in which Dr. Schwarz references Dr. Mallya, which states, "I have been courting a particular younger doc at Penn." (*See* Pl.'s Opp'n Ex. 180 [Sept. 19, 2008 e-mail from Dr. Schwarz].) However, the e-mail contains no mention of Dr. Robinson and comments positively on Dr. Mallya's credentials. Even accepting that Dr. Mallya was a replacement for purposes of an ADEA claim, Dr. Schwarz offered at his deposition that Dr. Mallya was hired because of his unique skills in analyzing data, and that Dr. Robinson lacked those skills. (*Id.* Ex. 196 [Schwarz Dep.] 53-57.) Taken together with the City's evidence that Dr. Robinson was also terminated because of the budget crisis, the evidence is insufficient for a jury to conclude that age was the sole reason for Dr. Robinson's termination. *See Wardlaw v. City of Phila. Streets Dep't*, Civ A. Nos. 05-3387, 07-160, 2009 WL 2461890, at *7 (E.D. Pa. Aug. 11, 2009), *aff'd*, 378 F. App'x 222 (3d Cir. 2010).

Because the PHRA is interpreted in line with the ADEA, Dr. Robinson's age-based PHRA claim must also be dismissed. *See Smith v. Giant Eagle, Inc.*, Civ. A. No. 10-1644, 2011 WL 1706520, at *2 n.1 (W.D. Pa. May 4, 2011) (noting that "like the ADEA, the PHRA prohibits discrimination 'because of' age.").

**C. Section 1983 Claims**

Dr. Robinson also brings § 1983 claims against the individual defendants and the City. These claims fail.

Dr. Robinson first argues that he has established claims against both the individual defendants and the City for unspecified constitutional and/or federal statutory violations. He presumably argues that Defendants are liable under § 1983 for violating Title VII and/or § 1981 based on his reference to the "McDonald-Douglas [sic] analysis," but a review of the Amended Complaint reveals no reference to Title VII in the § 1983 count, nor does it recite the elements of a § 1981 claim, even though § 1981 is mentioned. The Court declines to infer any such cause of action at the summary judgment stage. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 116 (1985) (noting that § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere"); *Lagrassa v. Jack Gaughen, LLC*, Civ. A. No. 09-0770, 2011 WL 1257384, at *9 n.6 (M.D. Pa. Mar. 11, 2011) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint.") (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004)).

In his only cognizable § 1983 claim, Dr. Robinson protests that the CSC violated his procedural due process rights by denying him a hearing. However, as noted in the Court's Order of June 1, 2010, "Civil Service Commission decisions are . . . appealable to the Court of Common Pleas of Philadelphia County." *Acevedo v. City of Phila.*, 680 F. Supp. 2d 716, 722-23 (E.D. Pa. 2010) (citing 2 Pa Cons. Stat. § 752). Dr. Robinson has already appealed the CSC's decision, and he has presented no evidence to suggest he will not have his day in state court. Accordingly, the

Court will grant Defendants' motion with respect to Dr. Robinson's § 1983 claims. *See id.* at 747 (noting that "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants," unless the plaintiff provides evidence that such process would be futile) (quoting *Alvin v. Suzuki,* 227 F.3d 107 (3d Cir. 2000)).

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion in part and deny it in part. An appropriate Order will be docketed separately.

